## SUPERVISOR OF ASSESSMENTS OF MONTGOMERY COUNTY *v.* ELY ET AL.

[No. 257, September Term, 1973.]

*Decided June 24, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ.

*K. Donald Proctor, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*William J. Rowan, III,* with whom were *Heeney, McAuliffe & Rowan* and *Joseph M. Quirk* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

In 1961, the appellees acquired a 20-acre tract of land contiguous to the Town of Gaithersburg (the Town). Early in 1966, the owners of a separate 130-acre tract, also adjacent to Gaithersburg, petitioned to have their land and an additional 72 acres (202 acres in all), including the appellees' property, annexed to the Town. On February 18, 1966, the appellees filed a petition requesting annexation of their property by the Town.

On April 4, 1966, the Town proposed the annexation of the 202 acres, subject to the requirements of publication, public hearing and the right of referendum as provided by Maryland Code (1973 Repl. Vol.) Art. 23A, § 19.[1] At a hearing held on May 23, the Town's Planning Commission recommended that upon annexation the entire 202 acres be placed in a half-acre residential zone, pending further study; opposition to that plan was expressed and the record was held open to permit parties seeking annexation to file zoning requests. By letter dated May 27, 1966, the appellees proposed a "simple plan" for zoning the entire 202 acres; under their proposal, the property would be zoned C-2 (heavy regional commercial). The letter stated in pertinent part:

"In reference to the annexation of our 20 acres on

---

1. The statute requires that the municipality, after introducing the annexation resolution, publish a description of its proposed boundary changes and hold a public hearing on the question of annexation. Following the hearing, the municipality may enact the resolution, but it will not become effective until at least 45 days after final enactment. Section 19 (f) provides that 20 per cent of the residents of the area to be annexed may petition for a referendum within the 45-day period on the annexation resolution, thereby suspending its effectiveness, contingent upon the result of the referendum.

Rt. #355, which has been included in the 202 acre petition, we cannot in any way go along with the planning commission's suggestion . . . ."

* * *

"We wish to suggest a simple plan to you for zoning this 202 acres, which will solve a multitude of planning and annexation problems, for the Town as well as the property owners."

* * *

"By zoning . . . [the 202 acres] commercial . . . [C-2], Gaithersburg will have the benefits of the largest commercial center in upper Montgomery County, and you will control its development.

". . . There will not be a referendum.

"If you follow the planning commission's suggestion that annexation be attempted on this 202 acres using the R-R zone, you will be compelling the property owners to request a referendum and withdraw the property from [the] Town. As you probably are aware, it will soon be impossible to initiate this annexation again, because of changing assessments and other factors governing annexation."

On July 11, 1966, the Town annexed the entire 202 acres. The appellees' property was zoned C-2 as to 9.55 acres, C-1 (light regional commercial) as to 3 acres, and the remainder of their tract was zoned R-A (half-acre residential lots). No referendum was held and the annexation and zoning became final on August 24, 1966.

Code (1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 19 (b) (1) provides in pertinent part:

"Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, . . . it being the intent of the General Assembly that the assessment of farmland shall be maintained at levels compatible with the continued

use of such land for farming . . . . The General Assembly hereby declares it to be in the general public interest that farming be fostered and encouraged in order to maintain a readily available source of food and dairy products close to the metropolitan areas of the State, to encourage the preservation of open space as an amenity necessary to human welfare and happiness, and to prevent the forced conversion of such open space to more intensive uses as a result of economic pressures caused by the assessment of land at a rate or level incompatible with the practical use of such land for farming. . . ."

Prior to its amendment in 1972, § 19 (b)(2) provided in pertinent part:

"From and after July 1, 1969, lands that are actively devoted to agricultural use, (i) which are, or have been, zoned to a more intensive use at the instance of an owner . . . shall be valued and assessed according to such agricultural use and in addition shall be valued on the basis of the full cash value of such lands . . . .

"These lands shall be taxed upon the basis of the agricultural use value assessment as long as they continue to be actively devoted to farm or agricultural use. Upon (i) the sale of a lot or portion of such lands or (ii) the conversion of the use of a portion or all of such land to nonagricultural use, a deferred tax shall become due on the lot or portion sold or converted, which shall be equal to the tax which would have been paid if the tax had been computed on the basis of the 'full cash value' assessment . . . ."

By Chapter 75 of the Acts of 1972, the General Assembly rewrote § 19 (b)(2) to provide in relevant part:

"(2) (A) The following lands shall not be subject to the provisions of paragraph (1) hereof:

"(i) Land zoned for industrial, commercial, or multifamily residential use as of July 1, 1972, *if such zoning has been effected upon application or at the instance of the owner* or any former owner of the land, or by any person who has or has previously had a property interest therein; provided that this paragraph shall not include an application for rezoning to correct an acknowledged error in the original zoning." (Emphasis supplied.)

Although the appellees' property was being actively farmed on July 31, 1972, the date of finality for that tax year, and had prior to 1972 been assessed on the basis of its agricultural use, the Supervisor of Assessments of Montgomery County assessed it at its full cash value for 1972.[2] The Supervisor concluded that the commercial zoning of part of the property in conjunction with its annexation in 1966 was effected "at the instance of the owner" within the contemplation of § 19 (b)(2), and that the property therefore had to be assessed at its full cash value, rather than as farmland. The appellees protested the assessment, which later was affirmed by both the Supervisor and the Appeal Tax Court for Montgomery County. The appellees then appealed to the Maryland Tax Court.

At a hearing before the Tax Court, Marvin W. Simmons, Jr., one of the owners of the appellees' 20-acre tract, testified that the appellees had petitioned to have their property annexed to the Town, but made no application for zoning. He stated that the appellees' letter of May 27 set forth a recommendation for zoning of the 202 acres that would "solve all problems." Simmons testified that the zoning suggested in the letter was not granted upon annexation; that the zoning placed upon their property by the Town was "unworkable"; that the appellees attempted to use their property as zoned, and were encouraged by the Town to apply for rezoning. He stated that in 1967 the appellees

---

2. Article 81, § 14 (b)(1) directs that all real property except as otherwise provided be assessed at its full cash value on the date of finality, defining full cash value to mean "current value less an allowance for inflation, if in fact inflation exists."

applied to rezone their property from its R-A and C-1 zoning to C-2 zoning, but that that application was denied by the Town in 1969.

Sanford W. Daily, the Town's city manager, testified with respect to the annexation and zoning process; he acknowledged that it was the Town which determined the zoning classifications applicable to the annexed property. He said:

> "Historically, the City has established a procedure for annexation of property and its almost immediate rezoning or establishing zoning on the property after it is annexed."

> \* \* \*

> "Because . . . first of all, the services that are provided by the City are somewhat limited . . . [as] the City is in an urban County and a lot of services are provided. There are a few services which the City obviously can provide and one of them is the review and planning of a particular piece of property. And that is the reason why the annexation and zoning goes into — is in a very, you know, joined posture, if you will.

> "Primarily because if the City and the people who wish to be annexed . . . are not satisfied, they are provided the alternative . . . of the referendum process. And, in fact, in several cases the City has . . . placed zoning on property which the property owner was not satisfied with, and they have appealed it to referendum and defeated the annexation.

> "So, mindful of that process, the City has always tried to work out the annexation and the zoning in at least a mutually satisfactory arrangment."

The Tax Court concluded on the evidence before it that the commercial zoning placed upon part of the appellees' property by the Town was not in accordance with their request and consequently was not effected upon application

or at the instance of its owners within the meaning of § 19 (b)(2). The Tax Court said:

> "On the basis of the entire record . . . , we feel that there has been no showing that the land, although zoned commercial as of July 1, 1973, was rezoned by an application from, or at the instance of, the owner of this subject property. . . ."

The Tax Court ordered the assessment of the property based on its agricultural use, and the Supervisor appealed.

The Supervisor argues that the evidence adduced before the Tax Court, viewed in light of the explicit intent of the Legislature to encourage continued use of farmland for farming, shows as a matter of law that the commercial zoning was effected "upon application or at the instance of the owner"; that the appellees' letter of May 27 represented an offer of annexation conditioned upon commercial zoning; that the Town's zoning of their property may be viewed as a counteroffer; that since no annexation referendum was requested by the appellees, "they must be presumed to have received what [zoning] they sought"; and the fact that the Town failed to zone all of their property C-2, as requested, cannot alter this conclusion as the appellees "by specific request evidenced their intent that they will not continue to use the tract for farm purposes and as a result thereof, zoning (apparently satisfactory to them) was applied to their tract whereby they now have the ability to utilize their land for commercial purposes."

The appellees argue that the decision of the Tax Court is based upon substantial evidence and must be affirmed. They maintain that no condition of commercial zoning was placed upon their annexation petition, as their interest never reached a point "where they required certain zoning or mentioned any alternative other than possible resort to referendum if such could ever be called"; that their letter of May 27 made no specific reference to their 20-acre tract, but rather referred to the entire 202 acres and was an expression of desire for zoning of that land — a suggestion which

focused upon the benefits to be reaped by the Town from such a plan; and that their request for rezoning in 1967 evidenced their dissatisfaction with the Town's zoning of their tract.

The common denominator for testing judicial review of the act of an administrative agency such as the Maryland Tax Court has been defined as whether a reasoning mind reasonably could have reached the factual conclusion the agency reached; this need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment. *Fairchild Hiller v. Supervisor*, 267 Md. 519, 298 A. 2d 148 (1973); *Supervisor of Asses. v. Banks*, 252 Md. 600, 250 A. 2d 860 (1969); *Ins. Comm'n v. Nat'l Bureau*, 248 Md. 292, 236 A. 2d 282 (1967). Thus, while it is our responsibility to ascertain the meaning and intent of § 19 (b)(1) and (2), if a "reasoning mind" could reasonably have reached the factual conclusion which the Tax Court reached in light of the statute's provisions, its action must be upheld.

Article 81, § 19 (b)(1) excepts from assessment at full cash value land "actively devoted to farm or agricultural use." Section 19 (b)(2) provides that land, upon which commercial zoning has been *effected* upon the application or at the instance of its owner, though actively being farmed, is not entitled to such an exemption. We agree with the Supervisor that the 1972 amendment of that section mandates the conclusion that land zoned industrial, commercial, or multifamily residential at the "instance" of its owner, even though being farmed, will not continue to be used for farming and is not entitled to assessment based upon such use. However, the evidence adduced before the Tax Court revealed that the appellees recommended zoning for the entire 202-acre tract and did not request zoning specifically upon their property alone; that the zoning that they requested was not placed upon their tract; and that they unsuccessfully applied for rezoning in the year following annexation to conform that zoning to the zoning which they had requested. On the evidence in this case, a reasoning mind could reasonably conclude that the Town's zoning of the appellees' property in conjunction with its annexation

was not "effected upon application or at the instance of the owner."

*Order affirmed; costs to be paid by the appellant.*