775 A.2d 1234

**Dennis ALVIANI et al.,**

**v.**

**Phyllis DIXON et al.**

**No. 132, Sept. Term, 2000.**

Court of Appeals of Maryland.

July 13, 2001.

Stanley D. Abrams (Cathy G. Borten, Abrams, West, Storm & Diamond, P.C., on brief), Bethesda, for petitioners.

Susanne Koster Henley, Annapolis, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

The Board of Appeals of Anne Arundel County (hereinafter Board) granted an application for a special exception to build an automotive service facility and variance requests incident to the proposed automotive service facility made by Phyllis Dixon and Jonathan Aaron, respondents. Dennis Alviani, Fulvio Alviani, Maryann Alviani, Leonard Bender, and William E. Neiman, petitioners, filed a request for judicial review with the Circuit Court for Anne Arundel County. The Circuit Court affirmed the decision of the Board.

Petitioners then filed an appeal to the Court of Special Appeals. The Court of Special Appeals, in an unreported opinion, affirmed the decision. Petitioners then filed a Petition for Writ of Certiorari with this Court. We granted the Petition. Petitioners have presented two questions in the Petition:

1. Whether the Anne Arundel County Board of Appeals erred as a matter of law in granting the special exception when the only way to approve the special exception was by approving three (3) variances to the statutory standards for the automobile filling station special exception use?

2. Whether the Board erred as a matter of law by failing to make the necessary findings required in order to grant a variance, and whether the record before the Board contained evidence sufficient to support such findings? [1]

We answer no to both questions and affirm the decision of the Court of Special Appeals. We hold that the Board had the authority to grant a special exception with variances when the Anne Arundel County Code precluded variances from being applied to some sections of the code and the special exception section was not one of those excluded sections. We also hold that there is substantial evidence in the record to establish that the Board made the necessary findings to grant the variances.

## I. Facts

Respondents own a 1.2 acre parcel of land located on Old Mill Bottom Road at U.S. Route 50 east in Annapolis, Mary-

---

1. Petitioners changed question two in their brief to this Court to state: Whether the Board erred as a matter of law by failing to make the necessary findings required in order to grant *the special exception and variances in that the board did not define in its opinion the limits of the neighborhood as it relates to certain statutory standards for approval and* whether the record before the board contained evidence sufficient to support any such finding? [Emphasis added.]
We will answer question two as it was submitted to us in the Petition for Writ of Certiorari.

land. The property was originally part of a larger tract, but in 1990 the State Highway Administration obtained 7.65 acres of that tract by threat of condemnation for placement of an access ramp to Route 50. After the access ramp was built and various improvements were made to Route 50, the remaining parcel was an isolated, circular plot of land that was surrounded by roads and access ramps. As it currently sits, the parcel is partially developed with an old service station that is in a state of disrepair.

Prior to 1995, the parcel of land was split zoned 40% C1–B (community retail) and 60% RLD (residential low density).[2] In 1995, respondents, who hoped to develop an automotive service facility[3] on the parcel, filed an application with the Anne Arundel County Department of Planning and Code Enforcement requesting a zoning reclassification. An automotive service facility could not be developed on that part of the parcel encumbered with a RLD classification. Respondents requested that the Department of Planning and Code Enforcement reclassify the entire property as either C4 (highway commercial) or C1–B. A C4 classification would permit an automotive service facility to be constructed without a special exception, while a C1–B classification of the entire parcel would require a special exception for the automotive service facility to be constructed. Both zoning classifications would require variances to permit the proposed development because of the circular shape of the isolated parcel, a shape that resulted from the 1990 taking. In their application, respondents requested the variances and the special exception if the parcel was zoned C1–B.

In respect to the special exception, respondents requested variances from two of the criteria required by Article 28,

---

**2.** Split zoned is a zoning phrase indicating that one parcel of land is encumbered with two different zoning classifications; a portion of the parcel is zoned differently than the remaining parcel.

**3.** The automotive service facility was to include six covered pump islands in three parallel rows, a canopy, a 2,657 square foot convenience store, a drive-through car wash, and a parking area.

section 12–206(b) of the Anne Arundel County Code as conditions for approval of the special exception. Section 12–206(b) states, in relevant part, that:

### § 12–206. Automotive service stations.

. . .

(b) An automobile service station is permitted in a C1–B or C3 District, provided:

(1) any lot used for a station has at least 150 feet of frontage along each street, and a lot area of at least 22,500 square feet;

. . .

(8) pump islands are at least 20 feet apart. . . .

As a result of the extensive taking in 1990 by the State Highway Administration, the parcel was left with only 143 feet of frontage along Old Mill Bottom Road. Respondents, therefore, were requesting a variance of seven feet from the 150 feet of frontage required by section 12–206(b)(1).

Respondents also requested a variance from section 12–206(b)(8), which requires that pump islands be at least twenty feet apart. Respondents were proposing to operate six gasoline dispensers at the site, with each dispenser located on a separate pump island. The dispensers would be located in three parallel rows, with two dispensers per row. The rows would have thirty feet of space between them and the two dispensers in each row, on their separate pump islands, would be twelve feet apart. Respondents were requesting a variance of eight feet from the twenty feet distance that was required by section 12–206(b)(8).[4]

---

4. The applicants apparently could have put each row of gas dispensers on one continuous elevated island without the necessity of getting a variance. The variance was required because the applicants believed that it would be better for pedestrian movement, drainage, etc., to cut up the islands so that people wanting to go between the pumps would not have to step up and down. In any event, it appears that the twenty-foot provision was intended to apply to the distance between parallel lines of pump islands to enable two cars to be side by side-one at each island. Its wording, however, is not that specific. Here, it was applied, perhaps incorrectly, to a distance between two dispensers on

Respondents requested one other variance from Article 28, section 10–103(a) of the Anne Arundel County Code, which covers general setback requirements for all uses located on a dual, multi-lane, or divided highway. Section 10–103 states, in relevant part, that:

### § 10–103. General setback requirements.

(a) Notwithstanding any provision to the contrary, each structure that is located on a dual, multi-lane, or divided highway shall be setback at least 60 feet from the existing right-of-way line. An accessory use may not be permitted in this setback.

The proposed overhead elevated canopy over the pump islands would roughly be located at the site of the present dilapidated service station structure. It was proposed that one corner of the overhead canopy be set back thirty-five feet from the Route 50 access ramp. Respondents requested a variance of twenty-five feet from the sixty-foot set back requirement for this corner of the edge of the elevated canopy. Because it was elevated, it would not interfere with ground level lines of sight across the edge of the property.

The Department of Planning and Code Enforcement for Anne Arundel County recommended to the Hearing Officer that respondent's application for the C1–B zoning option and the special exception and variances, subject to certain conditions, be approved. In its Findings and Recommendations, the Department of Planning and Code Enforcement stated that:

### VARIANCE

Relative to the variance application, the Department has no major issues with the granting of the setback, lot frontage and distance between pump islands. The canopy and pump islands are to be located in the general vicinity of the existing building which is to be torn down. Only a small corner of the canopy projects into the setback area and the

---

the same dispenser line because the operator desired to eliminate the elevated area between two dispensers.

area at issue is oriented towards the ramps, not the main highway. The lot frontage issue was created by State action with the resulting configuration limited by roadways. There is no option to reconfigure the property. *The distance between pump islands is almost a non-issue. The 20 foot minimum distance between pump islands was established to allow two cars side by side served from parallel pump islands.* The 12 foot break between islands results in the splitting of a single island to enhance drainage and pedestrian flow.

**SPECIAL EXCEPTION**

The site plan submitted as part of the application, appears to satisfy the specific design standards for a service station with the approval of the variances. Though the ability to access Ferguson Road is not yet resolved, Special Exception approval should remain flexible to accommodate the general layout whether this access point occurs or not. Relative [to] the more general standards, the issue of "need" should be addressed by the applicant to the satisfaction of the Hearing Officer.

**RECOMMENDATION**

Based on the reasoning as outlined herein, the Department of Planning and Code Enforcement would recommend denial of the C–4 zoning option and in the alternative support C–1–B, the variances and the special exception subject to:

1) the upgrading of Old Mill Bottom Road to a 70 rating as outlined by Public Works.

2) the resolution of the Ferguson Road issue with the State Highway or the modification of the plan to contain only one access point from Old Mill Bottom Road.

3) the showing of "need" to the satisfaction of the Administrative Hearing Officer. [Emphasis added.]

On March 7, 1996, a hearing was held by a Hearing Officer to consider respondent's application. The Hearing Officer's Findings and Recommendations of March 28, 1996 approved the C1–B reclassification but denied the C4 reclassification and also denied the special exception and variances. Respondents appealed to the Board of Appeals, seeking reversal of

either the Hearing Officer's denial of the C4 reclassification or a reversal of the denial of the special exception and variances. The Board of Appeals made respondents either appeal the denial of the C4 reclassification or the denial of the special exception and variances. Respondents chose to appeal the denial of the C4 reclassification. That appeal was denied by the Board of Appeals.

Respondents filed a Petition for Judicial Review in the Circuit Court for Anne Arundel County. The Circuit Court held that the Board of Appeals should have allowed respondents to present evidence on the special exception and variances under the C1–B classification. The Circuit Court remanded the case to the Board of Appeals for the taking of testimony and a determination on the issue of the special exception and the variances in a C1–B classification.[5]

On September 11, 1997, after the case was remanded, the Board of Appeals held a public hearing on the special exception and variances. The Board of Appeals then issued a Memorandum of Opinion on December 2, 1997 in which the Board conditionally approved the special exception and variances. The Board stated that:

> The Board finds from the testimony presented and its site visit, that, except where a variance has been requested, the Petitioners meet the criteria set forth in Section 12–206 of the Zoning Regulations. The Board finds further that the Petitioners have presented sufficient evidence to warrant the grant of the three requested variances.

The Board then discussed the granting of the variances, stating that "[i]n order to grant the variances requested, the Board must find that the Petitioners comply in all respects with the relevant provisions of Section 2–107 of Article 3 of the Anne Arundel County Code."[6]

---

**5.** On remand respondents dropped their request for the parcel to be zoned C4 and concentrated on the special exception and variances under the C1–B classification.

**6.** Article 3, section 2–107 of the Anne Arundel County Code states, in relevant part:

The first variance examined by the Board was the seven-foot variance from the requirement of having 150 feet of road frontage. The Board stated that there was testimony that the parcel was bound on three sides by State Highway Administration rights-of-way and the remaining side was bound by Old Mill Bottom Road for 143 feet. The Board then stated:

> The Board finds that requiring the Petitioners to strictly meet the requirement of at least 150 of road frontage, where the property actually binds on all sides by either unbuildable road rights-of-way or actual road bed, represents an exceptional circumstance and an unnecessary hardship upon the Petitioners. Since the Petitioners cannot change their amount of lot frontage, the request for a 7 foot variance is the minimum necessary to afford relief to the Petitioners.

§ 2–107.  Standards for granting variance.

(a) The County Board of Appeals may vary or modify the provisions of Article 28 of this Code when it is alleged that practical difficulties or unnecessary hardships prevent carrying out the strict letter of that article, provided the spirit of law shall be observed, public safety secured, and substantial justice done.  A variance may be granted only after determining:

(1) that because of certain unique physical conditions, such as irregularity, narrowness or shallowness of lot size and shape, or exceptional topographical conditions peculiar to and inherent in the particular lot, there is no reasonable possibility of developing the lot in strict conformance with this article;  or

(2) that because of exceptional circumstance other than financial considerations, the grant of a variance is necessary to avoid practical difficulties or unnecessary hardship, and to enable the applicant to develop such lot.

. . .

(c) A variance may not be granted under subsection (a) or (b) of this section unless the Board finds that:

(1) the variance is the minimum variance necessary to afford relief;

(2) the granting of the variance will not:

(i) alter the essential character of the neighborhood or district in which the lot is located;

(ii) substantially impair the appropriate use or development of adjacent property;

(iii) be contrary to acceptable clearing and replanting practices required for development in the critical area;  or

(iv) be detrimental to the public welfare.

The Board then examined the eight-foot variance from the twenty-foot pump island separation requirement. Respondents were going to have three rows with two gasoline dispensers in each row. Instead of connecting the two dispensers in each row into one pump island, respondents were going to make each dispenser its own pump island. Respondents, however, only wanted to leave twelve feet of space between each pump island in a single lineal row of pump islands, not the twenty feet that is required to exist between adjacent parallel rows containing multiple pumps. The Board stated that:

> The separation of each pump dispenser into a separate pump island will ease the flow of runoff and pedestrian traffic under the canopy. The Board finds that requiring the Petitioners to include each row of pump dispensers in one pump island would result in a practical difficulty to and an unnecessary hardship upon the Petitioners and the community. Pedestrian traffic should be as unencumbered as possible. Large raised islands would hinder the ability of pedestrians, handicapped individuals, families with strollers and the like to move freely under the canopy and to access the convenience store component of this project. The Petitioners are providing 30 feet of width between adjacent rows of pump islands to create more than ample space for vehicles to access the pumps. The Board finds that the grant of a variance to this requirement will increase the public welfare which represents an exceptional circumstance worthy of the grant of a variance. The request for a variance of 8 feet to the 20 foot required setback is the minimum necessary to afford relief to the Petitioners while providing the maximum public accommodation. [Footnote omitted.]

The last variance requested by respondents and approved by the Board was a twenty-five-foot variance from the sixty-foot setback requirement for any structures on a dual, multi-lane, or divided highway. The Board found that the circular shape of the property and its proximity to Route 50 and its service ramps would leave respondents with "no reasonable

possibility of developing the lot with a canopy over the pump islands which meets the requirements of the Zoning Regulations." The Board found the canopy to be reasonable in size and that the canopy would not harm the public welfare by blocking sight lines for drivers.

The Board then determined that the three variances would not alter the essential character of the area as the neighborhood is mixed with residential and commercial uses and is impacted by its proximity to Route 50. The Board also stated that the variances would not impair the use or development of adjacent properties and would not even be noticed by the public. It then concluded that there was ample evidence to grant the requested variances, noting, however, that the respondents also were required to meet the general criteria for a special exception.[7]

---

**7.** Article 28, section 12–104 of the Anne Arundel County Code sets forth the general criteria for the granting of a special exception. Section 12–104 states:

§ **12–104. Standards for granting.**
A special exception use may be granted only if, in the opinion of the hearing authority:
(1) the use will not be detrimental to the public health, safety, and welfare;
(2) the location, nature, and height of each building, wall, and fence, the nature and extent of landscaping on the site, and the location, size, nature, and intensity of each phase of the use and its access streets will be compatible with the appropriate and orderly development of the district in which it is located;
(3) operations related to the use will be no more objectionable with regard to noise, fumes, vibration, or light to nearby properties than operations in permitted uses;
(4) the proposed use will not conflict with an existing or programmed public facility, public service, school, or road;
(5) if electric, sewer, storm drainage, or water service is available, the service will be adequate to service the proposed use and will have suitable access;
(6) the proposal will not overburden existing facilities as proposed in the master plan of water and wastewater for development of the surrounding areas;
(7) on-site water supply, sewerage treatment, storm drainage disposal, or power plant proposals will be adequate to service the proposed use;

The Board then discussed its finding that respondents had presented sufficient evidence to satisfy the twelve criteria for the granting of a special exception listed in section 12–104. The Board went through each of the twelve criteria, explaining the evidence that the Board felt satisfied each criterion.

Petitioners filed a Petition for Judicial Review in the Circuit Court for Anne Arundel County seeking a reversal of the Board's conditional approval of the special exception and variances. On August 12, 1998, the Circuit Court filed a Memorandum Opinion in which the Circuit Court affirmed the Board's decision. Petitioners appealed to the Court of Special Appeals and the Court of Special Appeals also affirmed the decision of the Board.

## II. Standard of Review

A proceeding on a special exception is subject to a full judicial review. *Mossburg v. Montgomery County,* 329 Md. 494, 506, 620 A.2d 886, 892 (1993). We examined the correct standard of judicial review in *White v. North,* 356 Md. 31, 44, 736 A.2d 1072, 1079–80 (1999), when we stated that:

In judicial review of zoning matters, including special exceptions and variances, "the correct test to be applied is whether the issue before the administrative body is 'fairly debatable,' that is, whether its determination is based upon evidence from which reasonable persons could come to different conclusions." *Sembly v. County Bd. of Appeals,*

---

(8) the proposed use has the written recommendations and comments of the Health Department, the Department of Public Works, and the Department of Utilities;

(9) the applicant has presented sufficient evidence of public need for the use;

(10) the applicant has presented sufficient evidence that the applicant meets and will be able to maintain adherence to the criteria specified in Subtitle 2 of this title for the specific use;

(11) the application will conform to the critical area criteria for sites located in the critical area; and

(12) the site plan demonstrates the applicant's ability to comply with the requirements of the Landscape Manual by its designation of the area necessary for screening, buffering, landscaping, and off-street parking.

269 Md. 177, 182, 304 A.2d 814, 818 (1973). *See also Board of County Comm'rs v. Holbrook,* 314 Md. 210, 216–17, 550 A.2d 664, 668 (1988); *Prince George's County v. Meininger,* 264 Md. 148, 151, 285 A.2d 649, 651 (1972); *Zengerle v. Board of County Comm'rs,* 262 Md. 1, 17, 276 A.2d 646, 654 (1971); *Gerachis v. Montgomery County Bd. of Appeals,* 261 Md. 153, 156, 274 A.2d 379, 381 (1971). For its conclusion to be fairly debatable, the administrative agency overseeing the variance decision must have "substantial evidence" on the record supporting its decision. *See Mayor of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 395, 396 A.2d 1080, 1087 (1979); *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 706, 376 A.2d 483, 495 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769 (1978); *Agneslane, Inc. v. Lucas,* 247 Md. 612, 619, 233 A.2d 757, 761 (1967).

In *Mayor of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 398, 396 A.2d 1080, 1089 (1979), we defined the substantial evidence test as " 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached,' *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309, 236 A.2d 282 (1967), or as ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," ' *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 390 A.2d 1119 (1978); *Snowden v. Mayor & C.C. of Balto., supra,* 224 Md. at 448, 168 A.2d 390." In applying the substantial evidence test:

The question for the reviewing court is ... whether the conclusions "reasonably may be based upon the facts proven." The court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.

*Annapolis Waterfront Co.,* 284 Md. at 399, 396 A.2d at 1089, quoting 4 K. Davis, *Administrative Law,* § 29.05, 137, 139 (1958).

When we review an administrative agency's order, we make sure that it is not premised upon an error in the law. *Ad + Soil, Inc. v. County Commissioners of Queen Anne's County,* 307 Md. 307, 338, 513 A.2d 893, 909 (1986). "Generally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based upon an error of law." *Belvoir Farms Homeowners Association, Inc. v. North,* 355 Md. 259, 267, 734 A.2d 227, 232 (1999), citing *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749, 753 (1998).

### III. Discussion

We hold a special exception with variances may be granted by a zoning agency when the applicable code contains provisions excluding certain areas of the code from being subject to variance relief, but does not exclude the section covering the relevant special exception from being modified by variances. In so holding, we answer the question first raised by the Court of Special Appeals in *Chester Haven Beach Partnership v. Board of Appeals for Queen Anne's County,* 103 Md.App. 324, 653 A.2d 532 (1995). We also find that there is sufficient evidence in the record to support the Board's findings.

### A. Granting of Special Exception With Variances

Petitioners contend that the Board erred as a matter of law in granting the special exception because the criteria for the granting of a special exception must be met without a variance.[8] In support of its proposition that the criteria for a special exception must be satisfied without a variance, peti-

---

**8.** The Board granted respondents' three variances; however, only two of the variances were for criteria necessary for the special exception. Only the two variances that relate to the special exception are expressly relevant to this part of our discussion. The two variances from criteria for the granting of a special exception are the seven-foot variance from the requirement of having 150 feet of frontage along each street and an eight-foot variance from the requirement of having the pump islands twenty feet apart. In any event, there was sufficient evidence to support the granting of all three variances.

tioners rely on *Chester Haven, supra,* and *Umerley v. People's Counsel for Baltimore County,* 108 Md.App. 497, 672 A.2d 173 (1996). Although neither *Chester Haven* nor *Umerley* decided the issue before this Court, petitioners point to language in *Chester Haven,* that was cited in *Umerley,* to support the idea that variances cannot be used to avoid meeting the expressed criteria required for the grant of a special exception. In *Chester Haven,* the Court of Special Appeals stated:

> The attempt to follow this procedure creates fundamental and conceptional problems with the generally accepted proposition that, if the express conditions necessary to obtain a conditional use are met, it is a permitted use because the legislative body has made that policy decision. Does the legislative intent that the use be permitted remain if the conditions are not met but are eliminated by an administrative body granting a variance? Upon such an occurrence, the application for a conditional use becomes dependent upon the granting of the variances. Under those circumstances, the presumption that a conditional use is permitted may well fall by the wayside. The policy that establishes certain uses as permitted is predicated upon the satisfaction, not avoidance, of conditions. Conditions the legislative body attaches to the granting of a conditional use normally must be met in accordance with the statute-not avoided. In any event, even if such a procedure would pass muster, if the variance process fails, the entire application fails.

*Chester Haven,* 103 Md.App. at 336, 653 A.2d at 538. While the Court of Special Appeals in *Chester Haven* realized that this could be an issue, it did not resolve the issue; it decided the case based upon the failure of the variance process itself.

The Anne Arundel County Code provides the standards for granting a variance and when variance procedures cannot be utilized. The Code, Article 3, section 2–107, states in relevant part:

### § 2–107. Standards for granting variance.

(a) *The County Board of Appeals may vary or modify the provisions of Article 28 of this Code* when it is alleged that practical difficulties or unnecessary hardships prevent carrying out the strict letter of that article, provided the spirit of law shall be observed, public safety secured, and substantial justice done. A variance may be granted only after determining:

(1) that because of certain unique physical conditions, such as irregularity, narrowness or shallowness of lot size and shape, or exceptional topographical conditions peculiar to and inherent in the particular lot, there is no reasonable possibility of developing the lot in strict conformance with this article; or

(2) that because of exceptional circumstances other than financial considerations, the grant of a variance is necessary to avoid practical difficulties or unnecessary hardship, and to enable the applicant to develop such lot.

. . .

(d) *This section does not apply to Title 1B or § 15–104A of Article 28 of this Code.*[9] [Emphasis added.]

The Code grants the Board the authority to grant variances from sections within the code, except for the titles and sections enumerated in section 2–107(d) aforesaid.

The local legislative body clearly knew that it could except certain parts of the Code from the application of the variance provisions. The section relating to the granting of a special exception for an automotive service station, located in Article 28, section 12–206, the special exception provision at issue here, was not one of the sections that was excepted. We have held that when there is an express exception to a statute, additional exceptions should not be implied. *See Taylor v. Friedman,* 344 Md. 572, 581, 689 A.2d 59, 63 (1997) ("Taylor's

---

**9.** Both Title 1B and section 15–104A of Article 28 concern the Parole Town Center Growth Management Area and section 2–107 does not apply, facially, to the area at issue in this case. The Parole Town Center Growth Management Area, as far as we have been informed, is not relevant to the parcel of land in the case *sub judice.*

position is reinforced by the rule of statutory construction dealing with statutes that express a general rule, followed by one or more specific exceptions to the general rule. Under those circumstances, a court ordinarily cannot add to the list of exceptions."); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 156, 416 A.2d 734, 737 (1980) ("Where a statute expressly provides for certain exclusions, other should not be inserted."). Accordingly, in an ordinance in which certain matters are excluded from the applicability of variance relief, it can be inferred that the legislative body's intent is that all other areas are susceptible to variance relief. The concerns about the intention of the legislative body, expressed in *Chester Haven*, are thus resolved. The legislative body has, by excluding portions of the code from the variance provisions, while not excluding others, expressed an intent that variance provisions be applied to all areas not excluded. That includes the special exception provision at issue here.

We discussed the granting or denial of a special exception in *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981), when we stated that:

This Court has frequently expressed the applicable standards for judicial review of the grant or denial of a special exception use. The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible *absent any fact or circumstance negating the presumption.* The duties given the Board are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan.

Whereas, the applicant has the burden of adducing testimony which will show that this use meets the prescribed standards and requirements, he does not have the burden of

establishing affirmatively that his proposed use would be a benefit to the community. If he shows to the satisfaction of the Board that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest, he has met his burden. The extent of any harm or disturbance to the neighboring area and uses is, of course, material. If the evidence makes the question of harm or disturbance or the question of the disruption of the harmony of the comprehensive plan of zoning fairly debatable, the matter is one for the Board to decide. But if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception use is arbitrary, capricious, and illegal. *Turner v. Hammond,* 270 Md. 41, 54–55, 310 A.2d 543, 550–51 (1973); *Rockville Fuel & Feed Co. v. Board of Appeals of Gaithersburg,* 257 Md. 183, 187–88, 262 A.2d 499, 502 (1970); *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287, 96 A.2d 261, 264 (1953); *Anderson v. Sawyer,* 23 Md.App. 612, 617, 329 A.2d 716, 720 (1974). These standards dictate that if a requested special exception use is properly determined to have an adverse effect upon neighboring properties in the general area, it must be denied.

*Id.* at 11–12, 432 A.2d at 1325. We discussed the granting of a special exception in *Board of County Commissioners for Cecil County v. Holbrook,* 314 Md. 210, 550 A.2d 664 (1988), when we stated, after discussing the standard for judicial review of the grant or denial of a special exception stated in *Schultz,* that:

In summary, where the facts and circumstances indicate that the particular special exception use and location proposed would cause an adverse effect upon adjoining and surrounding properties unique and different, in kind or degree, than that inherently associated with such a use regardless of its location within the zone, the application should be denied. Furthermore, if the evidence makes the issue of harm fairly debatable, the matter is one for the

Board's decision, and should not be second-guessed by an appellate court.

The *Schultz* test accords with the general standard for judicial review of the ruling of an administrative agency, which we have defined as "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached; this need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." *Supervisor of Assess. v. Ely*, 272 Md. 77, 84, 321 A.2d 166 [, 170] (1974).

*Id.* at 217–18, 550 A.2d at 668.

In *Stacy v. Montgomery County*, 239 Md. 189, 210 A.2d 540 (1965), we examined the granting of a special exception and a variance. Ernest Kendall purchased a piece of property with the intention of applying for a special exception to open a child care home. The special exception was granted by the County Board of Appeals for Montgomery County. This ruling was appealed to the Circuit Court for Montgomery County, which reversed the decision of the Board of Appeals on the ground that the building failed to meet the requirements of the zoning ordinance as to distance.[10] While his case had been pending on appeal, Mr. Kendall realized that the building did not meet the distance requirement so he applied for a variance from the distance requirement. His application for the variance was granted by the Board of Appeals. The Board of Appeals' decision to grant the variance was appealed to the Circuit Court, which affirmed the decision. Appellants appealed to the Court of Appeals.

The appellants's first contention on appeal was "that where one purchases realty with the intention to apply for a variance from restrictions imposed by a zoning ordinance, he may not

---

**10.** The Zoning Code required that the building be twenty-five feet from the property lines. Mr. Kendall's building was 24.42 feet from the property line and the building had a porch that was 21 feet from the property line. Mr. Kendall offered to remove the porch if he was required to by the Board. The Court, in *Stacy*, was not presented, and did not address, the combination variance—special exception nature of the applications as they evolved.

contend that such restrictions caused him peculiar hardships that entitle him to the special privileges he seeks." [11] *Id.* at 192, 210 A.2d at 541–42. The Court of Appeals found that Mr. Kendall did not know he was going to need a variance when he bought the property and that the need for the variance was not determined until after the special exception had been granted. The Court went on to state that:

> There is a marked distinction between "variance" and "special exception" in Montgomery County. A special exception within the meaning of the zoning ordinance is one which is controlled and which is expressly permissible in a given zone. It is granted by the Board, after a public hearing, upon a finding that conditions of the zoning ordinance are satisfied. A variance is authorized under the terms of the zoning ordinance where the literal enforcement of its terms would result in unnecessary hardships. By Section 104–22(a)(1) of the Montgomery County Code, the County Board of Appeals is authorized to "[g]rant variances from the strict application of this chapter when by reason of exceptional narrowness, shallowness, or shape of specific parcels of property * * * or by reason of exceptional topographical conditions or other extraordinary situations or conditions of

---

**11.** The recent Supreme Court case of *Palazzolo v. Rhode Island,* —— U.S. ——, 121 S.Ct. 2448, —— L.Ed.2d ——, 2001 U.S. Lexis 4910 (June 28, 2001), stands for the proposition that a purchaser of realty that is already subject to particular regulations is not foreclosed from constitutionally challenging that regulation or statute as an impermissible "taking." Justice Kennedy, for the Court, wrote:

> When title was transferred to petitioner . . . the wetlands regulations were in force. The state court held [that] . . . . [a] purchaser or a successive title holder like petitioner is deemed to have notice of an earlier-enacted restriction and is barred from claiming that it effects a taking.
>
> . . .
>
> The State may not put so potent a Hobbesian stick into the Lockean bundle. . . . Were we to accept the States rule, the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land. [Citations omitted.]

specific parcels of property, the strict application of these regulations or amendments thereto would result in peculiar and unusual practical difficulties to, or exceptional or undue hardship upon, the owner of said property; provided that such relief or variances can be granted without substantial impairment of the intent, purpose, and integrity of the general plan * * *." It is further provided that this provision shall not be construed to permit the Board "under the guise of a variance, to change the use of land." See *Montgomery County v. Merlands Club,* 202 Md. 279, 96 A.2d 261.

The Board heard the testimony of Clinton Frey, Jr., a surveyor, who, after having been qualified as an expert, testified as to the unusual shape of the property. The Board exercising its discretion in accordance with its expertise in zoning matters, determined from all of the evidence that all criteria had been met by the applicant to sustain the granting of the variance. We find that the court below was not in error in affirming the decision of the Board in granting the variance as provided in Section 104–22 of the Montgomery County ordinance under the circumstances presented in this case.

*Id.* at 193, 210 A.2d at 542 (alteration in original). While the facts in *Stacy* are slightly different from the facts in the case *sub judice,* and the question raised for the first time in *Chester Haven* and squarely presented in the case *sub judice* was not presented, nor addressed in *Stacy,* the Court, in that case, nonetheless affirmed the granting of a variance in a special exception case.

The Anne Arundel County Code, while prohibiting the application of variances from applying to certain sections of the Code, does not restrict Article 28, section 12–206, which contains the criteria for the granting of a special exception for an automotive service facility. The drafters of the Code obviously understood that they could restrict the application of variances as to certain sections within the Code. They chose to not restrict the application of variances to special exceptions.

■ We hold that the Anne Arundel County Board of Appeals may grant a special exception and, at the same time, also may grant area variances from the specific criteria provided in section 12–206(b) of Article 28 (Zoning Ordinance) of the County Code.

■ In the case *sub judice*, respondents substantially satisfied the criteria for the granting of a special exception. The two variances granted by the Board were for modifications of criteria that did not cause adverse effects upon the neighborhood or allow a use for the parcel that was outside of the special exception provisions of the general zoning plan. The two variances did not change the objectives of the Code to make the special exception satisfy certain criteria; the variances only allowed a slight modification that still enabled the special exception to fall into the comprehensive zoning scheme of that area. As utilized in this case, the variance procedure did not change the essential nature of the special exception use sought by the applicants. The Board did not err as a matter of law by granting the two minor variances that enabled respondents to satisfy the criteria for the granting of a special exception.

## B. Granting the Variances

■ In their Petition for Certiorari, petitioners contended that the Board failed to make the necessary findings required in order to grant a variance and that the record does not contain evidence sufficient to support such a finding. Specifically, petitioners allege that the Board failed to properly define the relevant neighborhood that was considered when the Board found that the variances would not affect the neighborhood. We disagree with petitioners and find, after examining the record, that the Board established the relevant neighborhood and that the findings made by the Board were supported by substantial evidence.

Respondents were granted three variances by the Board. The three variances are the seven-foot variance in respect to frontage on one street from the requirement of having 150

feet of frontage along each street, an eight-foot variance from the requirement of having the pump islands twenty feet apart,[12] and, in respect to one corner of an overhead canopy, a twenty-five-foot variance from the sixty-foot setback requirement from a dual, multi-lane, or divided highway. The standard for granting a variance is codified in Article 3, section 2–107 of the Code, which states in relevant part:

§ 2–107.  **Standards for granting variance.**

. . .

---

**12.**  The matter of the ground level crossovers between dispensers on the same line of dispensers probably did not need a variance in the first instance. It appears evident that the provision of distance separation between pump islands was intended to apply as to the distance between parallel pump islands, not to the distance between dispensers on one of the parallel lines of dispensers.

At the hearing on the special exception and variances held before the Board of Appeals, Larry Burkins represented the Department of Planning and Code Enforcement. Mr. Burkins, discussing the requested eight-foot variance from the requirement of having the pump islands twenty feet apart, stated that:

Section 12–206 (b)(a), a variance was sought to this action by the applicant, and I think I had indicated before at the previous hearing that personally I do not believe this is required, but the applicant did apply.

But this standard requires 20 feet between pump islands, and the pump islands in this case are basically parallel to one another. And they do have at least 20 feet between those pump islands so that two cars can fit in between, one served by each pump island.

However, in this instance-and it's quite common in the modern service stations-they split the pump islands, the linear pump islands so that it doesn't disrupt the flow of water in hosing down the pumps and so forth.

In this situation, they've split those linear islands to help free up drainage and that sort of thing, a necessity in cleaning up, and people crossing will-to go inside the store or anything from the pump islands will not trip over the curb. They have the spacing of only 12 feet from that linear split, so they asked for an 8 foot variance to allow that to occur.

The code isn't real clear and isn't up to the current technology, and the standards have changed slightly, but if I were reviewing the plans, I would not even require that because I think we're all aware of what the basic intent of that provision is, and there is no need for a car to go through that 12 foot slot.

They fit between the islands. They do not go at right angles to those pumps. So I think that basically summarizes the variance

(c) A variance may not be granted under subsection (a) or (b) of this section unless the Board finds that:

(1) the variance is the minimum variance necessary to afford relief;

(2) the granting of the variance will not:

(i) *alter the essential character of the neighborhood or district in which the lot is located* . . . . [Emphasis added.]

In its Memorandum of Opinion and Order dated December 2, 1997, the Board examined each variance and determined that each variance satisfied the requirements of section 2–107(a) and (c). Addressing section 2–107(c)(i), the Board stated:

The granting of the three requested variances will not alter the essential character of this area. *This neighborhood is developed with a mix of residential and commercial uses and is heavily impacted by its close proximity to Route 50 and its access ramps. The commercial uses are clustered along Route 50, as is the subject property, while the residential properties are further from the highway.* The subject property is within the C1B district and is permitted to accommodate commercial uses. It is also immediately adjacent to Route 50 and a commercially developed property. The canopy will not encroach on the required setbacks to residential property, but rather, the [setback from the] Route 50 right-of-way. [Emphasis added.]

We find the description of the neighborhood stated by the Board to be sufficient to satisfy the requirement of section 2–107(c)(i). The Board's description is precise enough to enable a party or an appellate court to comprehend the area that the Board considered when deciding to grant the variances. Furthermore, we cannot foresee how a more specific description of a larger or smaller neighborhood would have led the Board to determine that the three variances that were granted would

issue, and of course the special exception addresses the service station operation.

alter the essential character of the neighborhood. The Board's Memorandum and Opinion clearly explains the Board's reasoning behind the granting of the variances, and its explanation of the considered neighborhood properly led to an understanding of the area the Board considered when granting the variances.

We agree with the Court of Special Appeals's discussion when addressing the cases that petitioners have cited to show that the Board failed to properly define the neighborhood. The Court of Special Appeals, in its opinion, stated:

> The cases cited by appellants [petitioners] in support of their contention that that Board failed to define the surrounding neighborhood with sufficient particularity are inapposite. *See Prince George's County Council v. Prestwick, Inc.,* 263 Md. 217, 282 A.2d 491 (1971); *Chevy Chase Village v. Montgomery County Council,* 258 Md. 27, 264 A.2d 861 (1970); *Templeton v. County Council,* 21 Md.App. 636, 321 A.2d 778 (1974). In those cases, the property owners sought to vary use restrictions imposed by the zoning ordinance through a zoning map amendment. By contrast, appellees seek to vary the Code's area restrictions, not its use restrictions. The standards applied to area variances are more relaxed than those applied to use variances because "the impact of an area variance is viewed as being much less drastic than that of a use variance." *Anderson v. Board of Appeals,* 22 Md.App. 28, 39, 322 A.2d 220 (1974); *see also McLean v. Soley,* 270 Md. 208, 215, 310 A.2d 783 (1973); *Cromwell,* 102 Md.App. at 695 n. 1, 651 A.2d 424. Consequently, the cases cited by appellants do not support their contention that the surrounding "neighborhood" must be defined with the same precision in approving area variances as is required in approving use variances.

The description given by the Board of the neighborhood sufficiently defined the relevant neighborhood for variance purposes so that the Board could make a determination about whether the variance would alter the essential character of that neighborhood.

## IV. Conclusion

We hold that in certain circumstances, a zoning body may grant a special exception together with area variances to what otherwise would be specific standards or requirements applicable to such special exception. The special exception, however, must be in a section of the local code for which variances are not excluded. Moreover, the granting of the variances may not so substantially alter the criteria for the granting of the special exception so that the criteria of the special exception would be swallowed by the variance to the extent that the special exception would not be a use that was contemplated in the comprehensive zoning scheme in respect to any particular special exception.

In the case at bar, the Board properly granted the special exception and the variances. The variances granted only slightly modified the specific area standards for the special exception and did not enable a special exception use to be granted that would be outside of the scope of the special exception provisions of the general zoning scheme for that area.

We also hold that the Board made the appropriate findings in order to grant the variances and that there was substantial evidence on the record to support those findings. The Board established the relevant neighborhood in enough detail to enable the Board to determine that the essential character of the neighborhood would not be altered. It was, thus, in compliance with section 2–107(c)(i).[13]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**

---

13. As we have indicated at the beginning of this opinion, petitioners, in their brief, modified one of the questions for which we had granted certiorari, attempting to add the special exception to what, in their petition, had been termed as solely a variance issue as to "findings." That is inappropriate, and, accordingly, we have not specifically addressed that part of our opinion to the matter of the special exception. However, had we done so, we would still have upheld the granting of the special exception as well as the variances.