*Afshin Attar, et al. v. DMS Tollgate, LLC, et al.*, No. 12, September Term, 2016.  Opinion by Hotten, J.

**ZONING AND PLANNING — FINDINGS, REASONS, CONCLUSIONS, MINUTES OR RECORDS:** The Board of Appeals' description of the neighborhood impacted by a special exception must be precise enough to enable a party or appellate court to comprehend the area that the Board of Appeals considered. The sufficiency of this precision is determined through a review of the evidence in the record describing the impact on the surrounding properties, as referenced within the Board's opinion.

**ZONING AND PLANNING — PRESUMPTIONS AND BURDENS OF PROOF:** While an applicant for a special exception bears both the burden of persuasion and of production, the coexistent presumption of validity of a special exception does not shift the burden of proof to the protestant. This presumption in favor of the applicant is not mutually exclusive from the burdens upon the applicant, and the protestant must sufficiently rebut the presumption in favor of the applicant. The applicant is not relieved of the requirement of presenting evidence to establish a prima facie case as to those issues for which the applicant bears the burdens if the protestant sufficiently rebuts the presumption. The presumption in favor of the applicant merely enhances the probative value of other evidence adduced.

Circuit Court for Baltimore County,
Maryland
Case No. 03-C-14007926
Argued: October 11, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 12

September Term, 2016

_____

AFSHIN ATTAR, et al.

v.

DMS TOLLGATE, LLC, et al.

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: January 23, 2017

In October 2012, William and Mary Groff, the property owners, and Respondent, DMS Tollgate, LLC (collectively "Applicants") applied for a Petition for a Special Exception of the Baltimore County Zoning Regulations ("BCZR"), to operate a fuel service station with a convenience store containing a sales area larger than 1,500 square feet. The petition requested that Tollgate be permitted to construct a Wawa on an 8.51 acre property known as 10609 Reisterstown Road ("the property"). The property is zoned as BL-AS, or Business Local with Automotive Services.[1] The property is bordered by Reisterstown Road, Groff Lane, and the Gwynns Falls stream.

The Office of Administrative Hearings ("OAH") conducted a hearing in which the Applicants appeared in support of the grant of the Special Exception. Petitioners in this Court, Afshin Attar, Ashkan Rahmanattar, Malik Imran, and Perry S. Crowl (collectively "Protestants") attended in opposition. Witnesses for the Protestants testified at the hearing as to how the proposed Wawa would cause traffic congestion, a harmful environmental impact, and a detrimental effect upon the economic stability of the neighborhood. In its Opinion and Order dated October 31, 2013, OAH found that "these are impacts that are

---

[1] This zoning was obtained through the 2012 Baltimore County Comprehensive Zoning Map Process after extensive discussions between Tollgate, several county agencies and community groups. In exchange for the community groups granting the rezoning request, on August 28, 2012, Tollgate entered into a "DECLARATION OF COVENANTS AND AGREEMENTS," which required that the property be developed "in a manner consistent with and compl[e]mentary to the historic character of" the adjacent property.

inherent in the operation of a gasoline/convenience store[,]" and granted the Petition with conditions. [2]

The Protestants appealed to the Board of Appeals for Baltimore County ("the Board"), which approved the conditions for the Special Exception after a *de novo* evidentiary hearing. The Board noted that Tollgate

> decided to proceed with the request for a Special Exception before receiving County approval for the proposed road relocation and approval for the flood

---

[2] The Opinion and Order of the Administrative Law Judge stated:

The relief granted herein shall be subject to the following:

1. [Applicants] may apply for appropriate permits and be granted same upon receipt of this Order; however, [Applicants] are hereby made aware that proceeding at this time is at their own risk until such time as the 30-day appellate process from this Order has expired. If, for whatever reason, this Order is reversed, [Applicants] would be required to return, and be responsible for returning, said property to its original condition.

2. Unless extended by subsequent order, the special exception granted herein must be utilized within two (2) years from the date of this Order.

3. The "special exception area" shall include the 1.70 acre (74,088 SF) area of the proposed Wawa service station and convenience store, but shall not include the 0.43 acre (18,628 SF) area of proposed relocated Groff Lane.

4. Approval by Baltimore County of a landscape and light plan for the site.

5. Approval by county, state and federal authorities of the floodplain study and/or floodplain map amendment or revision as sought by [Applicants].

6. Approval and issuance of all necessary permits by the State Highway Administration.

- 2 -

plain relocation from [the Federal Emergency Management Agency]. Under the BCZR this approach is not prohibited and therefore the grant of a Special Exception has no bearing on the approval o[r] non-approval of the foregoing matters.

The Board granted the Special Exception "with the same conditions as those imposed by the Administrative Law Judge below."

The Protestants appealed for judicial review in the Circuit Court for Baltimore County. The circuit court found that the Board's findings: "were both reasonable and supported by substantial evidence in the record[]" and "were premised upon the proper application and conclusions of law[.]" The circuit court accordingly affirmed the decision of the Board on December 19, 2014. Thereafter, the Protestants appealed to the Court of Special Appeals. In an unreported opinion dated December 28, 2015, the Court of Special Appeals affirmed the decision of the circuit court. We granted the Petition for Writ of Certiorari filed by the Protestants. 447 Md. 297, 135 A.3d 416 (2016). Protestants present two questions for our review:

> 1. Whether Maryland's special exception jurisprudence requires the Baltimore County Board of Appeals to define the boundaries of the neighborhood of the proposed special exception before approving that special exception and, if so, whether the Board of Appeals' opinion satisfied Maryland's minimum requirements for articulating the facts found regarding the neighborhood's boundaries.
>
> 2. Whether the Court of Special Appeals erred when it held that the Applicant met its burden of proof, as articulated by the concurring opinion in *People's Counsel for Baltimore County, et al. v. Loyola College in Maryland*, 406 Md. 54, [956 A.2d 166] (2008).

We conclude that the Board's description of the neighborhood impacted by the special exception was precise enough to enable a party or appellate court to comprehend the area that the Board considered.

Secondly, we conclude that while an applicant for a special exception bears both the burden of persuasion and production, the coexistent presumption in favor of an applicant is not a mutually exclusive evidentiary burden. The Board correctly determined that the Protestants failed to sufficiently rebut the presumption of validity of a special exception. Accordingly, we affirm the judgment of the Court of Special Appeals.

**Standard of Review**

An appellate court reviews the decision of an administrative agency "under the same statutory standards as the [c]ircuit [c]ourt," meaning "we reevaluate the decision of the agency, not the decision of the lower court." *Gigeous v. Eastern Correctional Inst.,* 363 Md. 481, 495–96, 769 A.2d 912, 921 (2001) (citation and footnote omitted). In reviewing the decision of an agency, our role "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Md. State Police v. Warwick Supply & Equip. Co., Inc.,* 330 Md. 474, 494, 624 A.2d 1238, 1248 (1993) (citation omitted). Further, we may not substitute our judgment for that of the Board of Appeals unless the agency's

conclusions were not supported by substantial evidence or were premised on an error of law. *Stansbury v. Jones*, 372 Md. 172, 182, 184, 812 A.2d 312, 318, 319 (2002).

## Discussion

**I.    The Board's Opinion Referenced Ample Evidence of Record Which Sufficiently Enables Us to Comprehend the Area the Board Considered. Thus, the Board Sufficiently Defined the Neighborhood.**

The Protestants argue that the Board erred when it failed to define the boundaries of the Wawa's neighborhood. In support, Protestants urge that an applicant for a special exception must establish the boundaries of the neighborhood, and the zoning tribunal's written decision must satisfy Maryland law's minimum requirements for articulating the facts found regarding the neighborhood's boundaries.

Under BCZR § 502.1(A), a special exception use is prohibited if it is "detrimental to the health, safety or general welfare of the locality involved."[3]  In *Schultz v. Pritts*, we held that an applicant for a special exception "does not have the burden of establishing affirmatively that his proposed use would be a benefit to the community. If he shows to the satisfaction of the Board that the proposed use would be conducted *without real detriment to the neighborhood* . . . he has met his burden." 291 Md. 1, 11, 432 A.2d 1319, 1325 (1981).

We further held in *Montgomery County v. Butler*, "[t]he phrase 'detriment to the neighborhood' implies necessarily that the Board's task is to determine if there is or likely will be a detriment *to the surrounding properties*." 417 Md. 271, 305, 9 A.3d 824, 844

---

[3] BCZR § 502.1 does not explicitly require that a neighborhood's boundary be specifically defined.

(2010) (emphasis added). Thus, we held that, within the context of a special exception, the "neighborhood" means "the surrounding properties." *Id*. *See also Montgomery v. Bd. of Cty. Comm'rs for Prince George's Cty.*, 263 Md. 1, 5, 280 A.2d 901, 903 (1971) (holding that, in the rezoning context, "[t]he concept of a neighborhood is a flexible one, and will vary according to the geographical location involved[.]"); *Woodlawn Area Citizens Ass'n v. Bd. of Cty. Comm'rs for Prince George's Cty*, 241 Md. 187, 198, 216 A.2d 149, 156 (1966) (holding that, in the rezoning context, "what constitutes a neighborhood . . . is not and should not be precisely and rigidly defined[.]").

In *Alviani v. Dixon*, we considered whether the Anne Arundel County Board of Appeals erred when it granted variances[4] to enable applicants to satisfy criteria for a special exception, regarding the construction of an automotive service station. 365 Md. 95, 775 A.2d 1234 (2001). The protestants in *Alviani* specifically "allege[d] that the Board failed to properly define the relevant neighborhood that was considered when the Board found

---

[4] We outline *infra* how, for purposes of determining the sufficiency of the description of the "neighborhood," our rezoning jurisprudence is inapposite to our special exception jurisprudence. Parallel to this analysis, in *Alviani v. Dixon*, we addressed how our use variance jurisprudence is inapposite to our area variance jurisprudence. In *Alviani* we held:

> The standards applied to area variances are more relaxed than those applied to use variances because the impact of an area variance is viewed as being much less drastic than that of a use variance. Consequently, the cases cited by appellants do not support their contention that the surrounding "neighborhood" must be defined with the same precision in approving area variances as is required in approving use variances.

365 Md. at 120, 775 A.2d at 1248 (citations and quotation omitted).

that the variances would not affect the neighborhood." *Id*. at 117, 775 A.2d at 1247.  We disagreed and found, "after examining the record, that the Board established the relevant neighborhood[,]" as the Board's description was "precise enough to enable a party or an appellate court to comprehend the area that the Board considered when deciding to grant the variances." *Id*. at 117, 119, 775 A.2d at 1247, 1248.

*Lucas v. People's Counsel for Balt. Cty.* involved a petition for a special exception for an "airport" zoning special exception on a farm zoned for agriculture, located within a National Historic District in Baltimore County. 147 Md. App. 209, 216–17, 807 A.2d 1176, 1180 (2002), *disapproved of on other grounds by People's Counsel for Balt. Cty. v. Loyola Coll. in Md.*, 406 Md. 54, 956 A.2d 166 (2008).  In *Lucas*, the Honorable James A. Kenney, III employed the standard outlined in *Alviani*, and found that the Board's definition of the relevant area was insufficient, as it relied on only amorphous descriptions of the area to be considered:

> The Board relied on testimony regarding the adverse effect of the airport on the "land around Helmore Farm," on "the horse industry in the area," on the "historical district," and on "Greenspring Valley." The Board's definition of the relevant area does not provide the precision required for a party or an appellate court to comprehend the adversely affected area and to determine if the neighborhood reasonably constitutes the immediate environment of the subject property.

147 Md. App. at 241, 807 A.2d at 1195.

In accord with our precedent in *Alviani*, in conjunction with the special exception jurisprudence reflected by *Schultz*, *Butler*, and *Lucas*, we hold that the description of the neighborhood impacted by the special exception must be precise enough to enable a party or appellate court to comprehend the area that the Board considered. Precision is

determined through a review of the evidence in the record describing the impact on the surrounding properties, as referenced within the Board's opinion. *See also Critical Area Comm'n for Chesapeake & Atl. Coastal Bays v. Moreland, LLC*, 418 Md. 111, 135, 12 A.3d 1223, 1238 (2011) (holding that meaningful judicial review is possible when the Board summarizes substantial evidence in support of its findings).

In the case at bar, the Board's opinion stated in relevant part:

The [Applicants] offered into evidence the testimony of Ken Schmid, of Traffic Concepts, Inc., who was admitted as an expert in the fields of Traffic Engineering and Transportation Planning. Mr. Schmid opined that the proposed use will not create congestion of the roads, streets or alleys in the area of the subject property. The proposed relocation of Groff Lane to create a four way signalized intersection, according to Mr. Schmid, will create a safer and more convenient pattern of traffic circulation for the subject property and the surrounding area.

\*\*\*

The [Applicants] called Mr. Rick Richardson, of Richardson Engineering, who was offered and accepted by the Board as an expert in the fields of civil engineering, zoning and development.

\*\*\*

Mr. Richardson testified that the proposed fuel service station is not . . . located within a mile radius of any abandoned fuel service station(s).

\*\*\*

The Protestants called to testify John Seitz, of Transportation Resource Group, Inc. who was accepted by the Board as an expert in the area of Traffic Engineering. Mr. Seitz testified that as a part of his investigation of the proposed use of the subject site he evaluated the potential truck turning radius for fuel delivery trucks entering the proposed site using a computer based traffic modeling program and determined that a fuel delivery truck attempting to turn into the proposed site would cause potential congestion and traffic difficulty of Groff Mill Road because of the wide turning angle required for such trucks.

***

The Protestants next called Andrew Miller, PhD who was admitted as an expert in hydrological studies. Dr. Miller testified concerning the Flood Plain Study prepared by the [Applicants]. According to Dr. Miller the subject area contains a portion of the existing flood plain which will be filled in to facilitate construction of the site.

The Board's opinion references ample evidence of record for us to appreciate the area considered by the Board. The Board referenced testimony concerning the roads and intersections surrounding the subject property, including: Tollgate Road, Reisterstown Road, Groff Lane, and Reisterstown Road's intersection with Owings Mills Boulevard. The Board referenced testimony regarding the commercial development surrounding the property. In accordance with BCZR § 405.3,[5] the Board referenced testimony regarding an exhibit which depicted the five gas stations contained within a one-mile radius from the property. The Board referenced testimony regarding the flood plain surrounding the property. Unlike in *Lucas*, there was ample evidence presented to the Board regarding the immediate environs of the proposed Wawa, which the Board referenced in its opinion. Here, the evidence presented to the Board regarding the area impacted by the special exception, as referenced in the Board's opinion, was precise enough to enable a party or appellate court to comprehend the area that the Board considered. Thus, we will not disturb the Board's decision.

---

[5] BCZR 405.3 "Condition for disapproving special exception[]" provides in pertinent part "the Zoning Commissioner, prior to granting any special exception for a fuel service station, shall consider the presence of abandoned fuel service stations in the vicinity of the proposed site."

The Protestants further contend that we require a delineation of the neighborhood in rezoning matters, and accordingly, this same requirement should be extended to apply in special exception cases. We disagree.

Rezoning cases are inapposite to our analysis because of the respective burdens in rezoning and special exception matters. We have stated that:

> [T]here is a strong presumption of the correctness of original zoning and comprehensive rezoning and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning and comprehensive rezoning and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning or else evidence of a change in conditions resulting in a substantial change in the character of the neighborhood.

*Heller v. Prince George's Cty.*, 264 Md. 410, 412, 286 A.2d 772, 773 (1972) (citation omitted); *see also Border v. Grooms*, 267 Md. 100, 110, 297 A.2d 81, 86 (1972) (holding "that which reasonably constitutes the neighborhood of the subject property is one of the basic facts to be established by an applicant for rezoning, *and because of its fundamental involvement in any case resting on a contention of a change in the character of the neighborhood* it must be satisfactorily shown upon the record.") (emphasis added).

Given the heavy burden upon the party seeking a rezoning, and the strong presumption in favor of the original zoning, "some delineation of the general boundaries encompassed" is an apt evidentiary element in the rezoning context. *Border*, 267 Md. at 110, 297 A.2d at 86; *see also Heller*, 264 Md. at 412, 286 A.2d at 773 (holding that, in the rezoning context, "there is a strong presumption of the correctness of the original zoning" and "[t]he burden of proof, of course, is quite onerous and it rests squarely on the one seeking the reclassification."). There is an inverse evidentiary presumption, however, in

the special exception context. A special exception is presumed to be in the interest of the general welfare, and therefore a special exception enjoys a presumption of validity. *Schultz*, 291 Md. at 11, 432 A.2d at 1325. Given these conflicting presumptions, our requirement for a precise definition of the neighborhood within rezoning matters does not extend to special exception cases.

## II. The Burden of Proof Was Not Inappropriately Assigned to the Protestants

The Protestants argue that the Board of Appeals erred when it assigned the burden of proof to the Protestants and concluded that the Protestants' evidence did "not rebut the presumption of validity of the Special Exception use in this case." We disagree. A special exception in Baltimore County is granted pursuant BCZR § 502.1, which provides, in pertinent part:

> Before any special exception may be granted, it must appear that the use for which the special exception is requested will not:
>
> A. Be detrimental to the health, safety or general welfare of the locality involved;
>
> B. Tend to create congestion in roads, streets or alleys therein[.]

In *Schultz* we held:

> [T]he appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone.

291 Md. at 22–23, 432 A.2d at 1331. We further held that a special exception is presumed to be in the interest of the general welfare, and therefore a special exception enjoys a presumption of validity. *Id.* at 11, 432 A.2d at 1325.

It is undisputed that "both the burden of production and the burden of persuasion on the issue of whether the special exception should be granted[]" fall on the applicant, whereby the applicant must persuade the Board "by a preponderance of the evidence that the special exception will conform to all applicable requirements." *Loyola Coll. in Md.*, 406 Md. at 109, 956 A.2d at 199.

The Protestants, however, assert that the Board "assigned the burden of proof to the Protestants[]" when it stated: "The Protestants' concerns taken from the available evidence do not rebut the presumption of validity of the Special Exception in this case." Directly prior to this finding, however, the Board articulated the *Schultz* standard:

> there is a presumption under Maryland Law that a Special Exception is in [ ] the general interest of the jurisdiction and therefore valid and that a Special Exception is properly denied only when there are facts and circumstances showing the adverse impacts of the use at the particular location in question would be above and beyond those inherently associated with the Special Exception use.

The Board's opinion did not improperly assign the burden of proof to the Protestants. While an applicant for a special exception bears both the burden of persuasion and of production, the concurrent presumption in favor of a special exception applicant is not a mutually exclusive evidentiary burden. As the Honorable Glenn T. Harrell, Jr. explained within the context of presumptions of civil actions under Maryland Rule 5-301(a):

- 12 -

[A] presumption does not necessarily shift the burden of persuasion. Rather, it merely satisfies the burden of going forward on a fact presumed and *may* satisfy the burden of persuasion if no rebuttal evidence is introduced by the other side. . . . Stated differently, the party favored by the presumption is not relieved of the requirement of presenting evidence to establish a prima facie case as to those issues for which he bears the burden of proof if the adverse party sufficiently rebuts the presumption. In such instances, the presumption merely enhances the probative value of other evidence adduced.

*Anderson v. Litzenberg*, 115 Md. App. 549, 564, 694 A.2d 150, 157 (1997). Here, the Protestants did not set forth sufficient evidence to indicate that the proposed fuel service station would have any adverse effects above and beyond those inherently associated with such use under the *Schultz* standard. 291 Md. at 15, 432 A.2d at 1327. Thus, the Board simply stated that, in light of the Applicants having presented sufficient evidence demonstrating compliance with BCZR § 502.1 and the general presumption of validity enjoyed by special exception uses, the evidence as a whole did not warrant denial of the petition for the special exception.. *See Anderson*, 115 Md. App. at 564, 694 A.2d at 157. The Board's opinion did not inappropriately assign the burden of proof.

### III. The Evidence Presented by the Protestants Was Not Sufficient to Rebut the Presumption of the Validity of a Special Exception.[6]

---

[6] Protestants argued in their reply brief that the issue of whether there was substantial evidence in the record to support the Board's conclusions is not before this Court. As we noted in *Garner v. Archers Glen Partners, Inc.,* 405 Md. 43, 949 A.2d 639 (2008):

Since the time when this Court's jurisdiction became largely dependent upon the issuance of a writ of certiorari, we have consistently held that, in a case decided by an intermediate appellate court, we shall not consider an issue unless it was raised in a certiorari petition, a cross-petition, or the order by this Court granting certiorari. We again decline to address an issue not raised fairly in an otherwise successful Petition for Writ of Certiorari.

405 Md. at 60–61, 949 A.2d at 649 (citations omitted). *See also* Md. Rule 8–131(b)

(continued . . . )

The Protestants next argue that they presented evidence generating a genuine question of fact as to whether the special exception will create congested roads per BCZR § 502.1(B), and that it will have detrimental environmental and economic impacts per BCZR § 502.1(A).

## A. *Road Congestion*

BCZR § 502.1(B) requires that a special exception not "[t]end to create congestion in roads, streets or alleys therein[.]" At the hearing before the Board, the Applicants called Ken Schmid of Traffic Concepts, Inc. as an expert in the fields of Traffic Engineering and Transportation Planning. Mr. Schmid testified that the proposed use will not create congestion in the roads, streets, or alleys. Mr. Schmid testified that he and his company submitted two Traffic Impact Studies on behalf of the Applicants to the Maryland State Highway Administration in support of the planned relocation of Groff Road. On cross-examination, Mr. Schmid acknowledged that the planned road relocation had not yet received approval. The Board ultimately conditioned the grant of the Special Exception

---

(. . . continued)
("Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . . the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals."). This Court granted certiorari on the question of whether the Court of Special Appeals erred when it held that the Applicants met their burden of proof, as articulated in the concurring opinion in *People's Counsel for Balt. Cty. v. Loyola Coll. in Md.*, 406 Md. 54, 135 A.3d 416 (2016). We find that the sufficiency of the evidence in this matter is a necessary facet of the burden of proof issue, on which this Court granted certiorari. Moreover, the Protestant's Petition for Writ of Certiorari argued that the Board erred because it failed to address the fact the record contained genuine questions of fact regarding the Wawa's effect on traffic congestion, the Gwynns Falls stream and its flood plain, and the economic stability of the neighborhood.

upon approval and issuance of all necessary permits by the State Highway Administration. In addition, the Applicants presented the testimony of Mr. Rick Richardson, who was accepted by the Board as an expert in the fields of civil engineering, zoning and development. Mr. Richardson testified that the Wawa will meet or surpass the requirements of BCZR § 502.1. In rebuttal, Protestants provided testimony from John Seitz of Transportation Resource Group to support their contention that the proposed Wawa would result in potential congestion and traffic difficulty off Groff Mill Road as a result of turning fuel delivery trucks.

The *Schultz* special exception test considers whether the proposed use will have a greater impact here than one would ordinarily expect. The Protestants did not present "facts and circumstances [pertaining to congestion in the roads, streets, or alleys] that show that the particular use proposed at the particular location proposed would have any adverse effects *above and beyond those inherently associated with such a special exception use*[.]" 291 Md. at 15, 432 A.2d at 1327 (emphasis added). Thus, the Protestants did not sufficiently rebut the presumption of validity under *Schultz*.

## B.     *Floodplain Relocation*

The Protestants provided evidence that the Gwynns Falls floodplain may be impacted by the construction of the Wawa. The Board, however, did not render a factual conclusion on this issue: "The possibility of a negative impact upon the flood plain by [the Applicants'] plans will be determined separately by way of the investigation by State and Federal authorities and pursuant to Baltimore County Code (Section 32–8–101 [*et seq.*]) will only be granted when there is no adverse effect upon the safety and welfare of the

- 15 -

citizenry." Tollgate is not prevented by the BCZR from proceeding with the request for the Special Exception before receiving approval for the proposed floodplain relocation. Because the Board did not render, nor was it required to make, a factual conclusion on this issue, and we cannot arrive at such a conclusion, there was no error from the Board for us to review. *See United Parcel Serv., Inc. v. People's Counsel,* 336 Md. at 577, 650 A.2d at 230 (stating that our role "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.").

## C. Economic Impact

Lastly, Protestants argue that the Wawa will negatively impact the economic stability of the neighborhood, as the addition of a sixth gas station in the area may result in one of the five existing gas stations going out of business. We have held that the "prevention of competition is not a proper element of zoning." *Kreatchman v. Ramsburg,* 224 Md. 209, 219, 167 A.2d 345, 351 (1961) (citations omitted). The economic effects of zoning should be considered only as they affect the general welfare. *Id.* at 222, 167 A.2d at 352.[7] The speculative testimony provided by the Protestants as to the increase in supply in excess of demand within the fuel service station market fails to rebut the presumption of validity under *Schultz*.

---

[7] As we noted, the Board conducted an analysis of BCZR 405.3 and determined that "[t]he evidence presented at the hearing established that there are no abandoned fuel service stations located within either one-half mile or one-mile of the proposed site." Contrary to the Protestants' contention, the Wawa may increase competition within the relevant fuel service station marketplace, increase consumer welfare, and thus, may even *increase* the general welfare of the locality.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**