Circuit Court for Talbot County
Case No. 20-C-13-008528

**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1852

September Term, 2014

---

DAVIS H. WOOD

v.

JAMES VALLIANT

---

Meredith,
Arthur,
Sharer, J. Frederick
  (Senior Judge, specially assigned),

JJ.

---

Opinion by Meredith, J.

---

Filed:  February 28, 2017

In 2002, Davis Wood, appellant, obtained a building permit from the Town of St. Michaels and began constructing an addition to a residential structure at 203 Green Street. After the addition was substantially completed in 2004, one of Mr. Wood's neighbors complained to the Town's Zoning Inspector that the addition appeared to violate the rear setback restriction line. At the time, James Valliant, appellee, held a life estate interest in the property at 205 Green Street. For reasons we will explain in more detail later in this opinion, the Town never initiated a zoning enforcement action against Mr. Wood. Instead, the building passed its final inspection in 2006, and the Zoning Inspector issued Mr. Wood a temporary occupancy permit. In 2010, the Zoning Inspector determined that it would impose an undue hardship if she required the removal of the encroaching structure, and she issued Mr. Wood a final occupancy permit. Some of Mr. Wood's neighbors, including Mr. Valliant, appealed the Zoning Inspector's determination, and the Town's Board of Zoning Appeals affirmed the Zoning Inspector's action in 2013. Mr. Valliant and others then filed a petition for judicial review in the Circuit Court for Talbot County. The circuit court's ruling in favor of Mr. Valliant and the other petitioners in that proceeding is the subject of this appeal (although Mr. Valliant alone participated as an appellee in this Court).[1]

One of the arguments made by Mr. Wood in opposition to the petition for judicial review was based upon a statutory time limit that prohibits a person from initiating an action "arising out of a failure of a building or structure to comply with a setback line restriction more than 3 years after the date on which the violation first occurred." Maryland

_____

[1] The other petitioners who joined Mr. Valliant in filing the petition for judicial review in the circuit court were: Wickersham, LLC, and Boat Carpenters, LLC.

Code (1973, 2013 Repl. Vol., 2014 Supp.), Courts and Judicial Proceedings Article ("CJP"), § 5-114(b)(1). The circuit court concluded that this statute was inapplicable to the petition seeking judicial review of the ruling of the Town's Board of Zoning Appeals. But the circuit court acknowledged that "this action would not exist without the setback violation on Mr. Wood's property, which occurred sometime between 2002 and 2004." And, indeed, the only ruling as to which Mr. Valliant and the other petitioners sought relief in this case was the Town's decision not to require Mr. Wood to remove the structure that created the setback line violation. Consequently, we conclude that the circuit court erred in rejecting Mr. Wood's argument that the petition for judicial review was time-barred by CJP § 5-114(b), and we will reverse the judgment of the circuit court.[2]

---

[2] In addition to raising the issue based upon CJP § 5-114(b), Mr. Wood raised other issues which we need not address because we conclude that judicial review was time-barred. Questions presented in his brief included:

1. Do the holdings in *Falls Road Community Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 85 A.3d 185 (2014), concerning a local government's discretionary authority with respect to enforcement of zoning violations, preclude a third party property owner from challenging the Zoning Inspector's discretionary determination, made for good cause, not to enforce compliance of a setback violation?

2. Does the holding in *Falls Road* preclude a circuit court from ordering a de facto writ of mandamus requiring a Zoning Inspector to enforce compliance of a setback violation that the Zoning Inspector had determined for good cause not to enforce?

3. Did the Circuit Court err when it reversed the longstanding interpretation of the Zoning Inspector and the Board to find that notwithstanding the provisions of [CJP] § 5-114(b), a building permit cannot be considered to be a valid building permit when it is later discovered that the permit issued incorrectly permitted the building to violate a setback restriction?

## FACTS AND PROCEDURAL BACKGROUND

Davis Wood owns the residential property located at 203 Green Street in St. Michaels, Maryland. In the fall of 2002, the Town of St. Michaels issued a building permit for him to renovate the existing structure and construct an addition that extended from the rear of the house. In 2002, Mr. Valliant was the owner of an interest in the property next door, at 205 Green Street.[3]

In 2003, Mr. Valliant and others complained to the Zoning Inspector that the height of the foundation on Mr. Wood's renovated building was not in accordance with the building permit. But the Zoning Inspector concluded that the elevation of the foundation was in compliance with the building permit, and that ruling was upheld by the Circuit Court for Talbot County and this Court.

Construction proceeded. By May of 2004, the footings and foundation for the addition were placed, and framing had been completed. The renovations to the pre-existing structure were completed.

But, in May 2004, a new complaint was made to the Zoning Inspector by one of Mr. Wood's neighbors, who asserted that the addition appeared to be in violation of the

---

4. Did the Zoning Inspector properly exercise her discretionary authority pursuant to Town of St. Michaels Code, § 340-8D and the holding in *Falls Road*, when she determined not to enforce compliance of a setback violation?

[3] On June 29, 2016, this Court was notified by Wood's attorney that Mr. Valliant died on June 22, 2016. To date, no other party has been substituted in Mr. Valliant's place in this appeal. We were advised by counsel for appellant that Mr. Valliant held only a life estate in the property at 205 Green Street.

3

applicable rear lot line setback restriction. By letter dated May 17, 2004, the Zoning Inspector advised Mr. Wood that, although the addition was in compliance with his building permit, the addition did not meet the required 25 foot rear yard setback restriction. The Zoning Inspector suggested that Mr. Wood apply for a variance. He did so, but he was notified by letter dated October 6, 2004, that his application for a variance was denied.

Mr. Wood began to explore options for removing the portion of the structure that violated the 25 foot setback restriction, and he worked with an architect to develop revised plans for modifying and finishing the house. On August 12, 2006, the construction on Mr. Wood's property passed the "final" inspection required by his building permit, but the setback violation created by the addition remained unabated. On October 24, 2006, the Zoning Inspector issued Mr. Wood a temporary occupancy permit for the residence at 203 Green Street.

The Zoning Inspector extended the temporary occupancy permit eleven times. After the eleventh extension of a temporary occupancy permit was granted on April 1, 2010, the Zoning Inspector conducted a fresh review of the case to see if there was an alternative to requiring removal of the portion of the structure that violated the 25 foot setback restriction. Based upon her 2010 review of the records in the file and the Town's zoning ordinance, she decided not to require enforcement of the setback restriction. On April 30, 2010, the Zoning Inspector issued a memorandum ruling in which she found that "an undue hardship, of the type specifically contemplated by the St. Michael's Zoning Code, § 340-8.D, would result if the owner were required to remove the improvements constructed and completed pursuant to the legally issued building permit." The memorandum concluded:

4

The improvements may remain as constructed and shall be considered a legal non-conformity with respect to rear-yard setbacks, front-yard setbacks and any other matters which now or in the future may be shown to be non-conforming with respect to the addition as it was lawfully constructed pursuant to [Building] Permit No. 3225. As a result of the above findings of this date, and as a result of my determination that all inspections have been satisfactorily issued, a final occupancy permit has been issued and any now existing non-conformity resulting from lawful construction pursuant to Permit No. 3225 shall be deemed a legal non-conformity.

When Mr. Wood's neighbors, including Mr. Valliant, received notice of this action, they filed an appeal, asking the Town's Board of Zoning Appeals to overrule the decision of the Zoning Inspector. At the hearing before the Board, the Zoning Inspector explained that the improvements to Mr. Wood's property had been constructed "in accordance with the plans and specifications that had been previously submitted and approved by the different reviewing agencies within the Town, including [her] predecessor in the position of Zoning Inspector/Code Enforcement Officer." She noted: "The rear yard setback requirement violation was not noticed o[r] commented upon until after the improvements to the Wood house in violation of that requirement were completely constructed." She confirmed that, when the application for the building permit was filed, the location of the addition was clearly shown on the plans, and, despite multiple levels of review by the zoning office and the Town's Historic District Commission, no one had ever raised a concern about the rear yard setback. When the Town had published the required notice of issuance of the building permit in 2002, no appeal was filed.

The Zoning Inspector noted that, after construction began, the first inspection required under the building permit was for the footers, which were inspected and approved on May 29, 2003. The Zoning Inspector commented that, "[i]t is at this stage of

construction that compliance with setbacks normally – generally is verified." But no one raised any issue about the rear yard setback at that point. Noting that she had been hired as the Zoning Inspector in July 2003, the Zoning Inspector observed that the next inspection, addressing the framing, occurred on February 12, 2004, and, again, no one raised any question about compliance with the rear yard setback.

The Zoning Inspector testified that, when a neighboring property owner notified the Town on May 3, 2004, that there appeared to be a violation of the rear yard setback restriction, that was "the first time any issue relative to the rear yard setback is documented in the project files." She investigated the complaint, confirmed the setback violation, and suggested to Mr. Wood that one possible solution would be for him to seek a variance from the setback restriction. Mr. Wood's application for a variance was denied.

The Zoning Inspector testified that "the house was substantially completed prior to the discovery of the rear yard setback issue," and, after the variance was denied, Mr. Wood "sought a temporary occupancy permit for that portion of the house not in conflict with the rear yard setback requirement. That request was granted on October 24, 2006."

She acknowledged that, in the spring of 2010, "the then Town Manager asked me if I would be willing to review the Town Zoning Code to see if there were any provisions in the Code which could have been considered but had not been considered during the initial process." But, she insisted, "I reconsidered the matter on my own accord free from any outside influences." The Zoning Inspector said she based her decision not to take action to enforce the 25 foot rear yard setback restriction, and to issue the final occupancy permit, on several factors. It appeared that the previous zoning inspector had missed the setback

6

problem and had never discussed it with Mr. Wood or his representatives. Moreover, the Zoning Inspector stated: "I did not believe that [Mr. Wood] or any of the representatives ever deliberately tried to avoid compliance with the 25-foot rear yard setback requirement." Further, "the improvements to the Wood residence were made in substantial compliance with all approved plans and requirements." The Zoning Inspector found no evidence that Mr. Wood "ever tried to avoid compliance through deceit or trickery," and, during the seven years this Zoning Inspector had been dealing with this project, "the Woods and their representative[s] . . . appeared to be straight forward and forthright."

The Zoning Inspector was also influenced by her discovery that the Town's Zoning Code had been amended in September 2003, at which time Ordinance 291 added § 340-8.D to the Code. This provision, which provided for non-enforcement of provisions of the Zoning Code under certain circumstances to avoid "undue hardship," had not been previously considered. Section 340-8.D of the Town's Zoning Code provided, in part:

> To avoid undue hardship, nothing in this chapter shall be deemed to require a change in the plans, construction, or designated use of any building on which actual construction was lawfully begun prior to the effective date of adoption or amendment of this chapter and upon which actual building construction has been diligently carried on.

The Zoning Inspector testified: "I deemed that consideration should have been given to that provision. Clearly construction had begun and diligently been carried on prior to September 2nd, 2003," the date on which the Town adopted this amendment to Chapter 340. The Zoning Inspector concluded: "To require the redesign and reconstruction of the substantially completed house would impose a considerable hardship on the Woods

7

[because] the renovations, as is apparent from the plans and visual examination of the home, were considerable, extensive and undoubtedly expensive."

For all those reasons, the Zoning Inspector testified, "I concluded that the Woods incurred a hardship and I concluded that it had not been brought about through their actions." The Zoning Inspector said that, in issuing the final occupancy permit despite the setback violation, "I have exercised my best efforts to properly consider the various aspects of this matter in making my decision to issue the occupancy permit," and "I tried my best to reconcile the requirements of and the rights granted by the Town Code with the facts as understood by me in reaching the decision."

Counsel for the neighbors who appealed the issuance of the final occupancy permit argued to the Board of Zoning Appeals that the Zoning Inspector did not have the legal authority to refuse to enforce a violation of the Zoning Code, and further, that § 340-8.D was not applicable to the circumstances of this case because the 25-foot rear yard setback restriction was in effect before construction began, and was not amended after construction commenced on Mr. Wood's addition.

On September 18, 2013, the Board of Zoning Appeals ruled that "the Zoning Inspector's determination, set forth in the April 30, 2010, Memorandum, and her issuance of the Final Occupancy Permit on May 7, 2010, were not in error and therefore were not arbitrary, capricious, or illegal." The Board explained:

> The Board finds that in the unique circumstances of this case, and in light of all the time that passed, it would be unfair and inequitable for the Town to impose the draconian penalty of requiring Mr. Wood to tear down the rear of his house. Based on the evidence and arguments presented and the matters of record of the entire history of the proceedings concerning the

8

Wood property, the Board finds that there was an excessive passage of time between when the Building Permit was issued in November of 2002, and when a neighboring property [sic] notified [the Zoning Inspector] of the encroachment in May of 2004. No one --- not neighbors, not the Town, not the appellants [including Mr. Valliant] --- raised the issue of the encroachment into the rear yard setback area until after footings were placed, the framing was installed, and construction of the renovations was completed. The Board finds that Mr. Wood substantially completed the construction of his residence, and that the inspections of the footings, foundation, and framing were completed and approved before the issue of the rear yard setback was raised, for the first time, in May of 2004. . . . The excess passage of time between when the Building Permit was issued and when the encroachment was discovered, coupled with the totality of circumstances surrounding the discovery of the encroachment, creates a uniqueness that causes this case to be more complicated than a simple rear yard setback violation, and skews the equities in favor of the homeowner, Mr. Wood.

* * *

The Board finds that the facts of this case present a narrow set of circumstances and uniqueness that support the Zoning Inspector's determination in her 2010 Memorandum and her issuance of the Final Occupancy Permit.

On October 15, 2013, Mr. Valliant and two other petitioners jointly filed the petition for judicial review that is the subject of this appeal. In the supporting memorandum filed by counsel for Mr. Valliant and his fellow petitioners, they argued that the Board of Zoning Appeals had erred in affirming the rulings of the Zoning Inspector because the 2010 ruling was, in effect, a reversal of the Board's previous denial of the requested variance, and the Board further erred in accepting the Zoning Inspector's interpretation of § 340-8.D, and in ruling that the passage of time and the equities supported the Zoning Inspector's decision not to enforce the setback restriction.

9

In opposition to the petition for judicial review, Mr. Wood argued that the Board of Zoning Appeals had ruled correctly that the Zoning Inspector was empowered to exercise discretion "not to continue to assert the rear setback as a violation," and, in making that decision, the Town, acting through the Zoning Inspector, had properly exercised "its responsibility to ensure that the Zoning Ordinance is being administered equitably and in the best interests of the Town." In a supplemental memorandum answering the petition for judicial review, Mr. Wood argued that CJP § 5-114(b)(1) bars the petitioners' action because this case is, at its core, a challenge to a setback violation that was the subject of a letter from the Zoning Inspector dated May 17, 2004. Because none of the petitioners had initiated any action or proceeding against Mr. Wood within three years after that date, the supplemental memorandum argued that the current complaints relative to the unabated setback violation were now time-barred.

After conducting a hearing, the Circuit Court for Talbot County issued a written ruling in favor of the petitioners. The court dismissed Mr. Wood's argument based upon the time limit imposed by CJP § 5-114(b) because, the court said, "Petitioners are not challenging the setback violation." The court viewed the most recent ruling of the Board of Zoning Appeals as an impermissible change of mind from the Board's 2004 denial of a variance. The circuit court ruled that the Zoning Inspector was required by law to enforce the provisions of the Town's Zoning Ordinance, and was without discretion to disregard the setback violation in this case. The court ruled that the decision of the Board of Zoning Appeals of September 18, 2013, was reversed, and the case was remanded for further consideration.

10

Mr. Wood then filed the present appeal. Only Mr. Valliant participated as an appellee in this appeal.

## STANDARD OF REVIEW

Whether the neighboring property owners' petition for judicial review was precluded by CJP § 5-114 is a question of law that we review *de novo*. *Lewis v. Baltimore Convention Center*, 231 Md. App. 144, 152 (2016). In our analysis, we shall accept all factual findings made by the Board of Zoning Appeals for which there is substantial evidence in the record to support the findings. *Afshin Attar v. DMS Tollgate, LLC,* ___ Md. ___, slip op. at 4 (filed January 23, 2017).

## DISCUSSION

We are persuaded that the neighboring property owners' petition for judicial review was subject to the time limit that CJP § 5-114(b)(1) imposes upon "an action or proceeding arising out of a failure of a building or structure to comply with a setback line restriction," and it is clear that the petition for judicial review was filed "more than 3 years after the date on which the violation first occurred." The action was therefore time-barred and should have been dismissed by the circuit court, leaving the ruling of the Board of Zoning Appeals to stand as issued on September 18, 2013.

Section 5-114 of the Courts and Judicial Proceeding Article is captioned "Setback line restrictions." Subsection (b) imposes time limits upon the initiation of an action arising out of the construction of a building or structure that is not in compliance with a setback line restriction. Subsection (b)(1) imposes a three-year limit within which a person must initiate an action or proceeding, and that three-year period begins on "the date on which

11

the violation first occurred." Subsections (b)(2), (b)(3), and (b)(4) impose a three-year limit within which a governmental entity must initiate an action or proceeding if the encroaching structure was constructed pursuant to a building permit, and the "otherwise valid building permit . . . wrongfully permitted the building or structure to violate a setback line restriction." Subsection (b)(4) establishes that the time limit for a governmental entity to initiate an action or proceeding begins on "the date on which the final building inspection was approved."[4]

---

[4] CJP § 5-114(b) provides:

(b)     (1) A person may not initiate an action or proceeding arising out of a failure of a building or structure to comply with a setback line restriction more than 3 years after the date on which the violation first occurred.
        (2) A governmental entity may not initiate an action or proceeding arising out of a failure of a building or structure to comply with a setback line restriction more than 3 years after the date on which the violation first occurred if the building or structure was constructed or reconstructed:
                (i) In compliance with an otherwise valid building permit, except that the building permit wrongfully permitted the building or structure to violate a setback line restriction; or
                (ii) Under a valid building permit, and the building or structure failed to comply with a setback line restriction accurately reflected in the permit.
        (3) For purposes of paragraph (2)(i) of this subsection and notwithstanding any other provision of State or local law to the contrary, a building permit that was otherwise validly issued, except that the permit wrongfully permitted the building or structure to violate a setback line restriction, shall be considered a valid building permit.
        (4) For purposes of paragraph (2) of this subsection, the date on which the violation first occurred shall be deemed to be the date on which the final building inspection was approved.

CJP § 5-114(d) provides:

To this day, neither the Town nor any other governmental entity of which we are aware has "initiate[d] an action or proceeding arising out of" the failure of Mr. Wood's addition to comply with the rear yard setback line restriction. So, in this appeal, we are primarily concerned with the time limit that was imposed upon Mr. Valliant (and other persons) by CJP § 5-114(b)(1).

As noted, the time limit for any person (other than a governmental entity) to "initiate an action or proceeding arising out of a failure of a building or structure to comply with a setback line restriction" is three years from "the date on which the violation first occurred." Although, with respect to actions by governmental entities, CJP § 5-114(b)(4) explicitly provides that the meaning of the phrase "date on which the violation first occurred" shall be "deemed to be the date on which the final building inspection was approved," there is no comparable statutory definition of the "first occurred" phrase as used in the statutory time limit applicable to claims by persons, *i.e.*, CJP § 5-114(b)(1). Accordingly, we are left to interpret that phrase pursuant to ordinary rules of statutory construction. The plain meaning of the phrase "the date on which the violation first occurred" is the date on which the owner of the property first performed construction of any component of a building or structure that encroaches upon the setback line restriction.

In this case, the findings of the Board of Zoning Appeals make it plain that the setback line restriction that is at the heart of Mr. Valliant's challenge to the most recent

---

(d) This section may not be construed to abrogate or affect the defense of laches or any other defense that a person may have to an action or proceeding for a violation of a setback line restriction.

13

ruling of the Board first occurred sometime prior to February 12, 2004. That is the date on which the Town's building inspectors approved the framing of the structure Mr. Wood was constructing. If Mr. Valliant or other complaining neighbors had initiated an action or proceeding relative to the setback line restriction long before they eventually did, we might have needed a more precise factual finding regarding the date on which the setback violation "first occurred." But, in this case, we can assume that the violation had to have first occurred by the time the structure had progressed to the point that the framing could pass inspection, and it is clear that no action or proceeding was initiated by Mr. Valliant (or the other petitioners) within three years after that date.

Indeed, the record reflects that, as of the date the Zoning Inspector issued the final occupancy permit on May 7, 2010, neither any person nor any governmental entity had initiated an action or proceeding against Mr. Wood arising out of the rear yard setback violation. Assuming, without deciding, that, when Mr. Valliant and others filed an administrative appeal of the Zoning Inspector's issuance of the final occupancy permit, that filing constituted the initiation of an action or proceeding as contemplated by CJP § 5-114(b)(1), that appeal to the Board of Zoning Appeals was not filed until June 21, 2010, which was well beyond three years after the date the setback violation first occurred.

Counsel for Mr. Valliant argues that CJP § 5-114(b) is not applicable to this case because the 2010 appeal to the Board of Zoning Appeals does not arise out of a setback violation, but rather, arises out of the Zoning Inspector's improper issuance of a final occupancy permit. This strained argument cannot overcome the fact that the *only* complaint that has been asserted regarding the allegedly erroneous issuance of the final occupancy

14

permit is based entirely upon the violation of the rear yard setback line restriction. It would not be an overstatement to say that, if we remove from this case the neighbors' complaint that the addition constructed on Mr. Wood's property is in violation of the rear yard setback restriction, there would be nothing remaining to talk about in this case. Clearly, the 2010 appeal to the Board of Zoning Appeals arose out of the setback line violation that first occurred more than three years earlier, and the same holds true for the circuit court proceeding seeking judicial review of the Board's 2010 ruling.

In light of this, we need not address Mr. Wood's argument that the time limit imposed by CJP § 5-114(b)(1) is a statute of repose. In *Anderson v. United States*, 427 Md. 99, 117 (2012), the Court of Appeals quoted this definition of a statute of repose from BLACK'S LAW DICTIONARY 1546 (9th ed. 2009): "A statute of repose is defined as a 'statute barring any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.'" (Footnote omitted.) Section 5-114(b)(1) appears to fit this description; the statute bars any action or proceeding from being initiated more than three years after the defendant caused a setback violation to occur, without regard to whether that violation has caused any identifiable injury. In CJP § 5-114(b)(1), the triggering event that starts the three year time limit for initiating an action is defined, as in other statutes of repose --- *see, e.g.*, CJP § 5-108(a); CJP § 5-108(b); and CJP § 5-112 --- as an event (namely, "the date on which the violation first occurred") that is "unrelated to when the [claimant's] injury or discovery of the injury occurs." *Anderson*, 427 Md. at 118. In *Anderson*, Judge Harrell wrote for the Court of Appeals and explained: "In common

15

parlance, statutes of limitation and statutes of repose are differentiated consistently and confidently by whether the triggering event is an injury or an unrelated event; the latter applying to a statute of repose." *Id*. at 119. The *Anderson* Court further explained that "[t]he purpose of a statute of repose is to provide an absolute bar to an action or to provide a grant of immunity to a class of potential defendants after a designated time period." *Id*. at 118. And, because the legislative purpose of a statute of repose is to provide an absolute bar to claims after a designated time, issues concerning discovery of the injury and tolling of the time limit are not pertinent to the application of a statute of repose. *Id*. at 121.

But, regardless of whether the time limit imposed by CJP § 5-114(b)(1) is a statute of repose or a statute of limitation, when a building or an addition to a building is constructed in violation of a setback restriction, any person who wishes to pursue an action or proceeding arising from that setback violation must act within three years after the violation first occurred. In this case, no person initiated a timely action or proceeding.

**JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY REVERSED, AND THIS CASE IS REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE PETITION FOR JUDICIAL REVIEW. COSTS TO BE PAID BY APPELLEE.**